UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JODY OLMSTEAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CCA OF TENNESSEE, LLC d/b/a ) | |
| CORRECTIONS CORPORATION OF ) | CASE NO. 1:08-cv-0029-DFH-DML |
| AMERICA, WARDEN JEFF CONWAY, ) | |
| TIMOTHY LITTLE, UNKNOWN CCA ) | |
| MAINTENANCE STAFF, UNKNOWN ) | |
| CCA MEDICAL STAFF and MARION ) | |
| COUNTY SHERIFF FRANK ANDERSON, ) | |
| ) | |
| Defendants. ) | |
| ALAN KRESS, BILLY FORD, ERIC ) | |
| STAGGS, TIMOTHY-PATRICK TREACY, ) | |
| RANDY CARR, on their own behalf and ) | |
| on behalf of a class of those similarly ) | |
| situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 1:08-cv-0431-DFH-WTL |
| ) | |
| CCA OF TENNESSEE, LLC d/b/a ) | |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, and MARION COUNTY ) | |
| SHERIFF FRANK ANDERSON, ) | |
| ) | |
| Defendants. ) | |

ENTRY ON MOTIONS TO DISQUALIFY

Plaintiffs in these actions are prisoners who complain about their treatment and conditions in a Marion County correctional facility operated under a contract by a private company, defendant CCA of Tennessee, LLC, which does business as "Corrections Corporation of America." On November 18, 2008, plaintiffs filed motions to disqualify me from presiding over both cases as the assigned district judge. Defendants have not responded. As explained below, both motions are denied.

The motions to disqualify do not cite applicable statutory or other authority. The governing statute is 28 U.S.C. § 455. Section 455(b) contains a detailed list of circumstances in which a judge must disqualify himself. None of those circumstances are present here, nor do plaintiffs argue that any are present. Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute imposes an objective standard. *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985).

Defendants in these cases are represented by the law firm of Barnes & Thornburg. Two partners, Michael Rosiello and William A. Hahn, have entered their appearances. Plaintiffs' motions to disqualify offer two grounds for disqualification. First, Mr. Hahn worked for me as a law clerk for one year (1999-

2000) after he graduated from law school.  Second, I was a partner in Barnes & Thornburg from 1991 until 1994, when I was appointed to the court.[1]  Plaintiffs argue that these circumstances create "a substantial appearance of impropriety" if I preside over these cases.  In my view, neither circumstance warrants disqualification from these cases in 2008.

During my first two years on the court, I disqualified automatically from all Barnes & Thornburg cases to provide what is sometimes called a "cooling-off period."  Since that time, I have disqualified in Barnes & Thornburg cases if the case involved a matter in which the firm was involved while I was a lawyer there.  See 28 U.S.C. § 455(b)(2).  Since those first two years, I have presided over many cases in which Barnes & Thornburg has represented parties.  Their clients have won many cases and lost many cases.

Several of my former law clerks have established law practices in Indianapolis, including Mr. Hahn.  My practice has been to apply a one-year cooling off period to cases involving former law clerks.  A lifetime of disqualification, as plaintiffs seem to demand, would be unwarranted.  Mr. Hahn last worked for me more than eight years ago.  His involvement in these cases does not warrant my disqualification.

---

[1] I was also an associate of the firm from 1984 until early January 1989. The other partner in the case, Mr. Rosiello, is also a friend whom I see socially two to three times per year.  Mr. Rosiello and I are also both members of the same American Inn of Court, an organization whose purpose is to promote ethics, professionalism, civility, and skill in the practice of law.

Plaintiffs' motions also state that their counsel "has subsequently learned that a number of Judge Hamilton's clerks have left the court to go to work for Barnes & Thornburg." I am aware of my law clerks' careers. I am aware of only one other former law clerk, in addition to Mr. Hahn, who has worked for Barnes & Thornburg. She worked there briefly in the mid-1990s before moving on to a different job in a different state.[2]

There may be circumstances, of course, when a judge has a personal relationship with a lawyer that would make it difficult for the judge to be impartial, or to be perceived as impartial by an objective observer informed of the relevant facts. See generally *United States v. Murphy*, 768 F.2d at 1536- 41 (7th Cir. 1985). As the Judicial Conference's Committee on Codes of Conduct for Judges and Judicial Employees has recognized, this is not an issue susceptible to bright lines. See Advisory Opinion No. 11 (cited in *Murphy*, 768 F.2d at 1537, and advising that judge must exercise judgment in deciding whether to disqualify from case in which one attorney was godfather of judge's child), available at www.uscourts.gov/guide/advisoryopinions.htm (last visited Dec. 11, 2008). The committee advised that the twofold test was "whether the judge feels capable of

---

[2]Plaintiffs' counsel may be confusing full-time law clerks with law students who intern in my chambers, typically for one day per week for one semester. I am aware that several of those students have worked for Barnes & Thornburg and may still work there. My working relationships with student interns are not comparable to those with law clerks, and I have not imposed any cooling-off period with respect to those interns.

-4-

disregarding the relationship and whether others can reasonably be expected to believe that the relationship is disregarded." *Id.*

Like most judges, I know many lawyers in a blend of professional relationships and personal acquaintances and friendships. I often know lawyers on both sides of cases; I rule in favor of and against the clients of lawyers who have been friends. There is nothing unusual about that. The Seventh Circuit addressed the issue at some length in *United States v. Murphy*, where the court recognized that in modern American legal culture, friendships among judges and lawyers are common and desirable, and noted that "many courts have held that a judge need not disqualify himself just because a friend – even a close friend – appears as a lawyer." 768 F.2d at 1537. At the same time, if the association exceeds what might reasonably be expected, unusual aspects might raise a reasonable question. *Id.* at 1538 (finding that objective observer might reasonably doubt judge's objectivity where judge and prosecutor were best friends and the two families had planned a joint vacation immediately after the defendant's sentencing). See also Alfini, Lubet, Shaman & Geyh, *Judicial Conduct and Ethics* § 4.09 at 4-42 to 4-45 (4th ed. 2007) (discussing balance of interests in considering whether social relationship calls for disqualification; balance depends on how close the personal relationship is).

The committee's Advisory Opinion No. 24 offers additional guidance here. The opinion first addressed how a newly-appointed judge should handle payments

for termination of the judge's interest in a partnership, especially if payment is made over a period of years.  The committee went on to advise:

> Apart from recusal during the period when the judge is receiving payments from a former law firm, there is a broader question of the appearance of impropriety in the judge's hearing cases involving that firm. Many judges have an automatic rule of disqualification for a specified number of years after leaving the law firm.  How long a judge should continue to recuse depends upon various circumstances, such as the relationship the judge had at the law firm with the lawyer appearing before the judge, the length of time since the judge left the law firm, and the relationship between the judge and the particular client and the importance of that client to the firm's practice.  *The Committee recommends that judges consider a recusal period of at least two years, recognizing that there will be circumstances where a longer period may be more appropriate.*  In all cases in which the judge's former law firm appears before the judge, the judge should carefully analyze the situation to determine whether his or her participation would create any appearance of impropriety.

Advisory Opinion 24 (emphasis added), available at www.uscourts.gov/guide/advisoryopinions.htm (last visited Dec. 11, 2008).  Some judges apply longer recusal periods for their former law firms, and some even recuse for their entire careers, but such long periods are not necessary or required.  In Indianapolis and the Southern District of Indiana, the legal community and court are relatively small.  A long-term recusal requirement for one judge and one major firm can shift an unfair amount of work to other judges.  Advisory Opinion 24 clearly implies that a disqualification 14 years after a judge has joined the court is not necessary.  I have not ignored the last sentence from the quotation above, but there is nothing unusual about this case that would call for any different approach.  See also Alfini, *et al.*, Judicial Conduct and Ethics § 4.10A at 4-53 ("A policy requiring a

-6-

judge to disqualify simply because he or she had a prior professional relationship with an attorney would be particularly burdensome on the judiciary.").

Plaintiff's counsel also complains that neither I nor defense counsel told him of Mr. Hahn's work for me as a law clerk or my past partnership with Barnes & Thornburg. Section 455(e) provides that the specific grounds for disqualification in section 455(b) may not be waived, but the more general grounds in section 455(a) may be waived if the waiver "is preceded by a full disclosure on the record of the basis for disqualification." See also *Murphy*, 768 F.2d at 1539. Two points are relevant here. First, for the reasons explained above, the circumstances here simply do not rise to the level of calling for disqualification under section 455(a), so there is no need for a waiver. Second, the key facts about my own biography, including my past work at Barnes & Thornburg are readily available in many public sources, including the court's public website, www.insd.uscourts.gov/Judges/default.htm (last visited Dec. 11, 2008). Similarly, Mr. Hahn's clerkship with me is listed as part of his biography on the Barnes & Thornburg website, www.btlaw.com/Person.asp?Personnel_ID=153 (last visited Dec. 11, 2008). If there were anything unusual to disclose in this case, as there was in *Murphy*, where the judge and prosecutor were planning to take a vacation together with their families just after the sentencing, the disclosure and waiver process plaintiffs suggest would have been appropriate, but there is nothing unusual about the circumstances of this case.

-8-

Accordingly, the motions to disqualify in both cases are denied.

So ordered.

Date:  December 11, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

-9-

Copies to:

William A. Hahn
BARNES & THORNBURG LLP
william.hahn@btlaw.com

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Jonathan Lamont Mayes
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jmayes@indygov.org

Paul K. Ogden
ROBERTS & BISHOP
pogden@roberts-bishop.com

Michael Rosiello
BARNES & THORNBURG LLP
mike.rosiello@btlaw.com
Kenneth T. Roberts
ROBERTS & BISHOP
ktrobatty@aol.com

Tasha Rebecca Roberts
ROBERTS AND BISHOP
troberts@roberts-bishop.com